# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVERY MERLO, on behalf of herself and all others similarly situated,<br><br>                     Plaintiff,<br><br>          v.<br><br>WATER WIPES (USA) INC.,<br><br>                     Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

## PREAMBLE

Plaintiff Devery Merlo ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant WaterWipes (USA), Inc. ("WaterWipes" or "Defendant") regarding the false and deceptive marketing and sale of its Plastic-Free Original Baby Wipes (the "Product"). WaterWipes represents to consumers that its Product is "plastic-free" and pure. Testing, however, reveals that the Product contains significant levels of microplastics. The presence of microplastics is especially concerning considering that the Product is meant for use on newborns and young children, that children are more vulnerable to exposure to microplastics, and that microplastics build up over time and accumulate in the body, increasing the risk of disease later in life. This is an action

alleging deceptive marketing, not personal injury; the health effects of microplastics are mentioned because they are a factor establishing the materiality of WaterWipes's representations to consumers.

Defendant WaterWipes's conduct violates business and state consumer protection laws, constitutes a breach of express warranties, and results in unjust enrichment at the expense of Plaintiff Merlo and the consumers she seeks to represent. Plaintiff Merlo alleges the following based upon the investigation of her counsel and upon information and belief, except as to the allegations specifically pertaining to Plaintiff Merlo, which are based on personal knowledge.

## **INTRODUCTION**

1.      WaterWipes markets and sells its Product[1] in California.

2.      According to its own website, WaterWipes is a "global business," selling its Product in over 50 countries.[2]

3.      On the Product packaging, WaterWipes represents that the Product is "Plastic-Free." WaterWipes also advertises the Product as pure, with representations such as the Product is made of "just 2 ingredients" (water and fruit

---

[1] Plaintiff alleges that any WaterWipes products that contain microplastics are within the scope of this Complaint. Plaintiff reserves the right to add future Products as a result of further discovery.

[2] WaterWipes, *About Us*, https://www.waterwipes.com/our-story (last visited May, 28, 2025).

extract)[3] and is "the world's purest baby wipes."

4.    Via WaterWipes's consumer-facing website, WaterWipes represents itself as a company committed to "purity" through its "plastic-free" baby wipes.

5.    The WaterWipes website and on-package representations at issue in this action are accessible to consumers in California and nationwide.

6.    Consumers within California and across the country believe that plastic pollution—particularly through microplastics—causes significant harm to human health and the environment.

7.    Consumers within California and across the country are also interested in products that are better for their health and are increasingly concerned about what they knowingly—and unknowingly—absorb through their skin.

8.    Further, consumers within California and across the country are increasingly worried about the products, substances, and chemicals to which they expose newborns and young children.

9.    Due to these concerns, many consumers are reevaluating their purchasing choices and the effects of those choices on their health, their families' health, and the environment.

---

[3] *Our ingredients*, WaterWipes, https://www.waterwipes.com/health-care/resources/waterwipes-ingredients (last visited May 27, 2025).

10.     Because of growing concerns about environmental and human health harms, consumers seek out less harmful services or products. Consumers prefer to support companies that protect their health and share their values, including a commitment to reducing impact on the environment and protecting the health of newborns and young children.

11.     For these reasons, it is increasingly beneficial for companies that sell products for use with newborns, babies, and young children to advertise themselves as "plastic-free" and/or "pure,"—sometimes despite the reality that their products contain microplastics.

12.     Contrary to WaterWipes's marketing representations to consumers, its Product contains microplastics.

13.     Testing by a third-party lab revealed the presence of microplastic in the Product at levels 387x the level of microplastic particles in the control (laboratory grade isopropyl alcohol).

14.     By misrepresenting the nature and quality of its Product, WaterWipes is able to capture the growing market of consumers who are concerned about plastic pollution and seek to support businesses with practices that are friendly to the environment and human health.

15.    WaterWipes's false and misleading representations and material omissions violate business and state consumer protection laws, constitute a breach of express warranties of merchantability, and result in unjust enrichment.

16.    Plaintiff Merlo brings this class action on behalf of herself, and others similarly situated, seeking equitable and monetary relief.

## **BACKGROUND**

17.    As explained infra § II, WaterWipes's representations are attractive to consumers nationwide as more and more consumers–especially parents of newborns–seek products that are free of microplastics.

18.    Microplastics are any plastics less than five millimeters in length that come from larger plastic debris that degrades into smaller pieces over time.[4]

19.    Microplastics have become increasingly pervasive, with recent studies finding microplastics in every human placenta and testicle studied,[5] as well as in every blood sample taken.[6]

---

[4] Vedant Sharma, *Microplastic: A Potentially Silent But Deadly Killer*, Pre-Collegiate Global Health Review (Oct. 14, 2021), https://www.pghr.org/post/microplastic-a-potentially-silent-but-deadly-killer.

[5] Damian Carrington, *Microplastics Found in Every Human Testicle in Study*, The Guardian (May 20, 2024), https://www.theguardian.com/environment/article/2024/may/20/microplastics-human-testicles-study-sperm-counts.

[6] *Microplastics Found in Human Hearts*, Plastic Pollution Coalition (Aug. 18, 2023), https://www.plasticpollutioncoalition.org/blog/2023/8/18/microplastics-found-in-human-hearts.

20.    Plastic pollution is now so widespread that a 2019 study commissioned by World Wildlife Fund International estimated that the average person could be consuming upwards of 5 grams of plastic every week, which is equivalent to roughly the weight of an entire credit card.[7]

21.    Once microplastics enter the bloodstream, they can spread throughout the body. These microplastics put stress on the body's immune system and have been found to increase the rate at which cancer cells spread.[8]

22.    Research has found that microplastics exposure, even in low doses, during the early developmental stage can induce long-term and devastating health effects, including higher likelihoods of illness later in life.[9]

23.    Newborns and young children are more susceptible to microplastic absorption through the skin because their most superficial layer of skin is thinner and more permeable than adults'.[10]

---

[7] *You May be Eating a Credit Card's Worth of Plastic Each Week: Study*, Reuters (June 11, 2019, 9:29 PM EDT), https://www.reuters.com/article/world/you-may-be-eating-a-credit-cards-worth-of-plastic-each-week-study-idUSKCN1TD002/.

[8] Simon Ducroquet & Shannon Osaka, *The Plastics We Breathe*, The Washington Post (June 10, 2024, 5:00 AM), https://www.washingtonpost.com/climate-environment/interactive/2024/microplastics-air-human-body-organs-spread/

[9] Nur Hanisah Amran et. al., *Exposure to Microplastics during Early Developmental Stage: Review of Current Evidence*, 10 Toxics 597, 597 (Oct. 10, 2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9611505/.

[10] *Id.*

24.    Exposure to microplastics in infancy induces numerous changes to the digestive, reproductive, central nervous, immune, and circulatory systems of children, which can have negative health consequences later in life.[11]

25.    Microplastics have been shown to leach hazardous chemicals, and have been linked to cancer, weakened immune systems, endocrine and reproductive problems, nervous system problems, hearing loss, and metabolic disturbances, among other harmful health effects.[12]

26.    Microplastics exposure, even in low doses, during the early developmental stage can induce long-term and devastating health effects.[13]

27.    These hazardous substances are particularly harmful to "pregnant people . . . and in babies, children, and youth whose hormone systems are [] extremely active to guide healthy growth and development."[14]

28.    Microplastics exposure during the neonatal period is linked to the development of multiple illnesses in adulthood.[15]

---

[11] *Id.*

[12] *Id.*; Yage Li et al., *Leaching of Chemicals from Microplastics: A Review of Chemical Types, Leaching Mechanisms and Influencing Factors*, Sci. Total Env't (Oct. 15, 2023), https://pubmed.ncbi.nlm.nih.gov/37820817/.

[13] Nur Hanisah Amran et. al., *supra* note 9.

[14] *From Womb to World, Plastics Harm Babies: How to Protect Their Health*, Plastic Pollution Coalition (May 12, 2024), https://www.plasticpollutioncoalition.org/blog/2024/5/12/from-womb-to-world-plastics-harm-babies.

[15] Nur Hanisah Amran et. al., *supra* note 9.

29.    Microplastics can be inhaled through the respiratory system as well as absorbed through the skin.[16]

30.    Newborns and young children are more susceptible to microplastic absorption through the skin because their most superficial layer of skin is thinner and more permeable compared to adults.[17]

31.    Exposure to microplastics in infancy induces numerous changes to the digestive, reproductive, central nervous, immune, and circulatory systems of children, which can have negative health consequences later in life.[18]

## **PARTIES**

32.    Defendant WaterWipes is a company specializing in premium baby wipes.

33.    Defendant is incorporated in North Carolina and headquartered in New Hampshire.

34.    Defendant markets and sells the Product in stores and online in California and throughout the country.

35.    Defendant manufactured, marketed, and sold the Product at issue at all times during the relevant Class Period, as defined *infra* ¶ 78.

---

[16] *Id.*
[17] *Id.*
[18] *Id.*

36.     Plaintiff Merlo is a citizen of California who resides in San Jose, California.

37.     Plaintiff Merlo purchased the WaterWipes Plastic-Free Original Baby Wipes Product in 2024.

38.     Plaintiff Merlo purchased the Product from Amazon.com in May 2020, February 2021, and February 2024.

39.     Plaintiff Merlo was attracted to the Product because of the Product packaging, which stated that the Product was "plastic-free" and was pure. At the time of purchase, she saw the Product's labeling and believed it was free from microplastics.

40.     More specifically, prior to her purchase, Plaintiff Merlo reviewed the images of the packaging and relied on Defendant's representations and labeling that the product was warranted as being "plastic-free" and pure. As such, those representations and warranties were part of the basis of the bargain. She would not have purchased the Product on the same terms had she known those representations were not true.  In making her purchase, Plaintiff Merlo paid a price premium due to the false and misleading claim that the Product was "plastic-free" and pure. Had Plaintiff Merlo known that the Product contained microplastics, Plaintiff Merlo would not have purchased the Product or would have purchased it under

substantially different terms.   Plaintiff Merlo did not receive the benefit of her bargain because the Product was not actually plastic-free or purely just water and fruit extract.

41.   Plaintiff Merlo remains interested in purchasing the Product from Defendant because she continues to need baby wipes and desires to find wipes least likely to harm her children or the environment. At this time, however, she is unable to determine if the Product is actually "plastic-free" or pure. As long as the Product is marketed as "plastic-free" and pure when in fact it contains microplastics, she will be unable to make informed decisions about whether to purchase the Product and will be unable to evaluate the different prices between Defendant's Product and a competitor's products. Plaintiff Merlo is further likely to be repeatedly misled by Defendant, unless and until Defendant is compelled to ensure that the Product's marketing as "plastic-free" and "the world's purest baby wipes" is, in fact, true.

42.   On April 24, 2025, Plaintiff Merlo sent Defendant pre-suit notice of her claims. No corrective action was taken.

## JURISDICTION AND VENUE

43.   This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act. There are more than 100 members in the proposed class. Plaintiff is a citizen of

California and consents to this Court's jurisdiction. Defendant has its principal place of business in New Hampshire and is incorporated in North Carolina.

44.     The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

45.     This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in California.

46.     Defendant has sufficient minimum contacts with California to establish personal jurisdiction of this Court over them because, *inter alia*, Defendant engages in deceptive schemes and acts directed at persons residing in, located in, or doing business in California, or otherwise purposefully avails itself of the laws of California through marketing and sales here.

47.     Defendant markets to consumers within California. The Product can be, and is, purchased in California by consumers, who see WaterWipes's marketing and on-label representations about the Product, both online and in stores on the Product's packaging.

48.     As shown below, Defendant operates a dedicated interactive website that specifically targets California consumers by featuring a store locator function, designed to guide residents to retailers within California where the Product is sold.



49.    Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading marketing and advertising regarding the nature of the Products and sales of the Products at issue, occurred within this District.

## **FACT ALLEGATIONS**

**I.    Defendant Markets the Product with "Plastic-Free" and Purity Representations.**

50.    Defendant WaterWipes makes affirmative on-package representations about the safety of its Product—namely, that they are "plastic-free" and are "the world's purest baby wipes."

---

[19] *Where To Buy*, WaterWipes, https://www.waterwipes.com/where-to-buy (last visited May 28, 2025).

1
2
3
4
5
6
7
8
9
10
11
12



13     51.     WaterWipes also makes on-package representations that its Product

14  contains "just 2 ingredients"—99.9% water and "a drop of fruit extract."

15
16
17
18
19
20
21
22
23
24
25
26
27
28

52.    On its website during the Class Period, as defined *infra* ¶ 78, WaterWipes stated that its "original wipe remains the world's purest baby wipe, but is now plastic free" and continues to make similar representations.[20]

53.    WaterWipes's social media page also states that the Product is "100% plastic-free."[21]



54.    WaterWipes also represents that its Product is "purer than cloth and water."[22]

---

[20] *Our Products*, WaterWipes, https://www.waterwipes.com (last visited May 28, 2025); *see also Environment*, WaterWipes, https://www.waterwipes.com (last visited May 28, 2025) (stating that Product is "plastic free").

[21]    WaterWipes    (@waterwipes),    Instagram    (Oct.    13,    2021). https://www.instagram.com/p/CU-FtjaMfO5/?img_index=1.

[22]    Marie-Louise,    *Umbilical    Cord    Care*,    WaterWipes, https://www.waterwipes.com/skincarehub/umbilical-cord-care (last visited May 28, 2025).

55.    Further, during the Class Period, as defined *infra* ¶ 78, WaterWipes touted the purported benefits of its decision to go "plastic free," including saving "228,594,728 plastic bottles a year," "3.28 Olympic-sized swimming pools of water," and "2.039 tonnes of packaging waste."[23]



56.    The Product's packaging includes a statement that "the claim does not refer to the full product lifecycle nor the external plastic packaging and relates to the wipes only."[24] It is, however, the wipes themselves that have been found to contain microplastics.

57.    The representations made by WaterWipes are intended to, and do, lead consumers to believe that the Product is free from microplastics and purely contains just water and fruit extract.

---

[23] *Our Wipes Are Now Plant-based and Plastic Free*, WaterWipes, https://www.waterwipes.com/health-care/waterwipes-is-now-plastic-free [https://web.archive.org/web/20241113013246/https://www.waterwipes.com/health-care/waterwipes-is-now-plastic-free] (last visited May 28, 2025).

[24] *Id.*

## II.    Defendant's Representations Are Material to Consumers.

58.    WaterWipes's representations that its Product is pure and free from plastics are material to consumers who care about making environmentally conscious and health-conscious purchasing decisions.

59.    As explained, *supra* § Background, consumers are aware of the health and environmental harms of microplastics, hence why representations about being free of plastics and purity are material to consumers.

60.    These representations are even more material to consumers purchasing Products for their newborns[25]–a cohort WaterWipes specifically markets to.[26]



---

[25] Nicholas Morine, *Parents Seeking Safety, Value, and a Return to Nature When Buying Products for Their Babies*, RetailWire (Jan. 3, 2025), https://retailwire.com/parents-safety-value-products-babies/.

[26] *See, e.g.*, *WaterWipes*, https://www.waterwipes.com/ (last visited May 28, 2025) (suggesting that consumers "Add to] Baby Registry").

61.    One study found that "61% of Americans are concerned about the products they put in, on and around their bodies."[27]

62.    Other research has found that "[c]onsumers want brands and retailers to be more transparent and open about their products."[28] In fact, "1 in 3 U.S. consumers use online resources to see how ingredients are sourced."[29] Also, "72% of U.S. shoppers said brand transparency is 'extremely important' or 'important.'"[30]

63.    Thus, a brand promising that their product only contains water and fruit extract–and explicitly not plastic–is making material representations to consumers concerned about avoiding microplastics.

64.    Additionally, a 2019 study conducted by Coleman Parkes Research on behalf of Accenture surveyed 1,500 consumers in seventeen cities throughout the United States and found that 47% of consumers surveyed expressed a desire to conduct business with retailers that are environmentally conscious.[31]

---

[27] *Most Americans Are Concerned About the Safety of Many Consumer Products – Yet Few Research Claims*, NSF (May 16, 2019), https://www.nsf.org/news/most-americans-are-concerned-about-the-safety-of-many-consumer-products.

[28] Elizabeth Christenson, *Transparency Influences Shopper's Beauty, Personal Care Purchases*, Drug Store News (Nov. 15, 2022), https://drugstorenews.com/transparency-influences-shoppers-beauty-personal-care-purchases.

[29] *Id.*

[30] *Id.*

[31] Lucy Koch, *Sustainability Is Factoring into 2019 Holiday Purchases*, eMarketer (Oct. 14, 2019), https://www.emarketer.com/content/sustainability-is-factoring-into-2019-holiday-purchases?_ga=2.170357734.731468461.1617378067-462530432.1615825431.

65.    Consumers also generally care deeply about environmental issues and are more likely to purchase products that they perceive to be sustainable.[32]

66.    Companies promising that their products are free of plastic–an inherently unsustainable substance–are making material representations to consumers concerned about avoiding environmentally harmful microplastics.

## III.    Defendant's Product Contains Microplastics.

67.    Testing facilitated by Plaintiff's counsel and conducted by an independent laboratory found microplastics in the Products at levels 387x the level of microplastic particles in the control (laboratory grade isopropyl alcohol). The testing information is as follows:

Product Tested: WaterWipes Original Baby Wipes.

Test Period: November 12, 2024 to December 16, 2024.

Laboratory: Parverio Inc., located in West Henrietta, NY.

Methodology: The lab filtered the water from the sample to capture debris particles suspended in the liquid (8 µm slits), performed in a laminar flow

---

[32]    *The Sustainability Imperative*, Nielsen (Oct. 12, 2015), https://nielseniq.com/global/en/insights/analysis/2015/the-sustainability-imperative-2/ (consumer survey finding that the majority of consumers seek to support sustainable business practices with their purchases and are more likely to buy products "from a company known for being environmentally friendly").

hood. The lab then stained the sample with a fluorescent dye to identify which of the small microparticulates were plastic, and washed away the residue. Larger fibers and particles are separated automatically into smaller particles through an operation known as watershedding. This operation permits the separation of particles that are adjacent into individual particles, however, larger fibers are separated into smaller particles for counting purposes.

68.    The testing showed that there were microplastics found throughout the Product, not just in the top wipe but also further down the stack.

**IV.    Defendant Is Misleading Consumers About Its Product.**

69.    Consumers see WaterWipes's assurances about the absence of plastic in its Product and reasonably believe that the Product would not contain and subsequently expose them or their children to any level of microplastics.

70.    Consumers also see WaterWipes's representations concerning purity and believe that the Products only contained the advertised ingredients, none of which are microplastics.

71.    Consumers who see WaterWipes's representations concerning how going plastic free helps the environment would not expect the Product to contain an unsustainable plastic substance.

72.    WaterWipes states that the **_packaging_** may still contain plastics, but intentionally fails to state that the **_Product itself_** may also contain microplastics from its marketing materials. This disclosure about packaging, combined with silence about the Product, further leads consumers to believe that the wipes are plastic-free.

73.    These representations are misleading to consumers because testing revealed that the Product contains microplastics.

74.    The presence of microplastics means that the Product cannot be "plastic-free."

75.    The presence of microplastics means that the Product is not pure.

76.    Reasonable consumers are not in a position to access or use the sophisticated testing equipment necessary to discover whether microplastics exist in the Product. Consumers must, and do, rely on WaterWipes's marketing, which WaterWipes knows and uses to its advantage.

## CLASS ALLEGATIONS

77.    Plaintiff Merlo realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

78.    Plaintiff Merlo brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated

individuals within the United States (the "Class"), defined as follows: all consumers who purchased the Product within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

79. Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Product in California during the Class Period (the "California Subclass").

80. Excluded from the Class are (1) Defendant, any entity or division in which the Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

81. There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a) Whether Defendant is responsible for the marketing at issue;

(b) Whether the marketing of the Product was unfair, misleading, false, deceptive, and/or unlawful;

(c) Whether the sale of the Product was unfair, misleading, false, deceptive, and/or unlawful;

(d) Whether Defendant was unjustly enriched; and

(e) Whether Defendant's conduct as set forth above injured Plaintiff Merlo and Class members.

82.     Plaintiff Merlo's claims are typical of the claims of the Class. Plaintiff Merlo is a member of a well-defined class of similarly situated persons, and the members of the Class were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint.

83.     The number of the Class members is unknown to Plaintiff Merlo at this time but may be reasonably ascertained through discovery regarding sales and distribution records.

84.     Plaintiff Merlo will fairly and adequately protect the interests of the Class and has no interests that are antagonistic to the claims of the Class. Plaintiff Merlo will vigorously pursue the claims of the Class and Subclass.

85.     Plaintiff Merlo has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiff Merlo's counsel have successfully represented consumers in complex class actions and currently represent consumers in similar complex class action lawsuits involving false advertising.

86.     A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff Merlo and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate

remedy other than by maintenance of this class action.

87.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action will benefit the parties and reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Merlo's and the Class members' claims together is manageable.

88.    No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

89.    The prerequisites to maintaining a class action for equitable relief are met. WaterWipes represents to consumers that its Product is "plastic-free" and marketing the Product with purity representations, such as "the world's purest baby wipes." Testing, however, reveals that the Product contains significant levels of microplastics. Defendant has, therefore, acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

90.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

91.     Defendant's conduct is generally applicable to the Class as a whole, and Plaintiff Merlo seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief appropriate with respect to the Class as a whole.

92.     Defendant's improper consumer-oriented conduct is misleading in a material way in that the marketing, *inter alia*, induced Plaintiff Merlo and Class members to purchase, purchase more of, and/or pay more for the Product than they would have had they not been deceived by the representations.

93.     Defendant made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

94.     Plaintiff Merlo and Class members have been injured by their purchase of the Product, which they otherwise would not have purchased and would not be continuing to use, which was worth less than what they bargained and/or paid for, which they paid the requested price for, and which they selected over other

products that may have been truthfully marketed.

95.     As a direct and proximate result of Defendant's violation of law, Plaintiff Merlo and members of the California Subclass, and all Class members paid for the falsely advertised Product and, as such, have suffered damages in an amount to be determined at trial.

96.     Plaintiff Merlo knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
**Unfair and Deceptive Acts and Practices
in Violation of the California Consumer Legal Remedies Act
(on Behalf of Plaintiff and the California Subclass)**

97.     Plaintiff incorporates by reference and realleges all paragraphs alleged above herein.

98.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

99.     Plaintiff and other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Product for personal, family, or household purposes.

100.    Plaintiff, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code

§1761(e).

101.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

102.   As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclass that the Products are "plastic-free" and pure.

103.   As a result of engaging in such conduct, Defendant has violated California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9).

104.   CLRA § 1782 NOTICE. On April 24, 2025, a CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Defendant received the letter but has failed to comply with the requested relief. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of herself and all other members of the California Subclass, seek

compensatory damages, punitive damages, injunctive relief, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT II
### Violations of California's False Advertising Law
### (on Behalf of Plaintiff and the California Subclass)

105.   Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

106.   As alleged more fully above, Defendant has falsely advertised the Product by claiming that the Product is "plastic-free" and pure.

107.   At all material times, Defendant engaged in a scheme of offering the Product for sale to Plaintiff and the other members of the California Subclass through, *inter alia*, commercial marketing and advertising, the Internet, the Product's packaging and labeling, and other promotional materials and offers for sale of the Product.

108.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising, and therefore, constitute a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

109.   Said advertisements and inducements were made within the State of California and come within the definition of advertising contained in the FAL in

that such promotional materials were intended as inducements to purchase the Product and are statements disseminated by Defendant to Plaintiff and the other members of the California Subclass that were intended to reach Plaintiff and the other members of the California Subclass. Defendant knew, or in the exercise of reasonable care, should have known, that these representations were misleading and deceptive.

110.   The above acts of Defendant did and were likely to deceive reasonable consumers, including Plaintiff and the other members of the California Subclass, by obfuscating the nature, quality, and ingredients of the Product, in violation of the "misleading" prong of the FAL.

111.   Plaintiff and the other members of the California Subclass have suffered injury in fact and have lost money or property as a result of Defendant's violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*

112.   Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to:

(a) provide restitution to Plaintiff and the other members of the California Subclass;

(b) disgorge all revenues obtained as a result of violations of the FAL;

(c) cease its unlawful and deceptive acts, and

(d) pay the attorneys' fees and costs of Plaintiff and the California Subclass.

## **COUNT III**
### **Violation of California's Unfair Competition Law**
### **(on Behalf of Plaintiff and the California Subclass)**

113.    Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

114.    By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

115.    Defendant has violated the UCL's proscription against engaging in *unlawful* conduct as a result of:

(a) Violations of the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9), as alleged above; and

(b) Violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above.

116.    Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

117.    As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Product is likely to deceive reasonable

consumers. Indeed, Plaintiff and the other members of the California Subclass were deceived regarding the "plastic-free" and pure qualities of the Product, as Defendant's marketing, advertising, packaging, and labeling of the Product misrepresent or omit the true facts concerning the benefits of the Product. Those acts are fraudulent business practices.

118.    Defendant's acts and practices described above also violate the UCL's proscription against engaging in ***unfair*** conduct.

119.    Plaintiff and the other members of the California Subclass suffered a substantial injury by virtue of buying a Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Product.

120.    There is no benefit to consumers or competition from deceptively marketing and labeling consumer goods like the Product, which purport to be "plastic-free" and pure when these unqualified claims are false.

121.    Plaintiff and the other members of the California Subclass had no way of reasonably knowing that the Product they purchased was not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the

injury each of them suffered.

122.    The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

123.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the members of the California Subclass seek an order of this Court that, *inter alia*, requires Defendant to:

(a)    provide restitution to Plaintiff and the other members of the California Subclass;

(b)    disgorge all revenues obtained as a result of violations of the UCL;

(c)    cease its unlawful and deceptive acts; and

(d)    pay the attorneys' fees and costs of Plaintiff and the California Subclass.

## COUNT IV
### Violation of State Consumer Protection Statutes
### (on Behalf of Plaintiff Merlo and All Class Members)

124.    Plaintiff Merlo realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

125.    Defendant's unfair, false, misleading, and fraudulent practices in marketing the Product, as alleged herein, violate each of the following state consumer protection statutes to the extent that Defendant's Product has been marketed in, and purchased by Class members in, the respective state: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§ 17200, 17500, 17580.5; Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat.§ 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a), (d); Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3); § 13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen.

Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2),(3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

126.    Defendant made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

127.    Plaintiff Merlo and all Class members have been injured by their purchase of the Product.

128.    As a direct and proximate result of Defendant's violation of consumer protection law, Plaintiff Merlo and all other Class members have suffered damages in an amount to be determined at trial.

129.    On April 24, 2025, a pre-suit letter was sent to the Defendant via certified mail that provided notice of Defendant's violations of state consumer protection statutes and demanded that within thirty (30) days from the date of the letter, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint seeking damages would be filed. Defendant

received the letter but has failed to take corrective action. Accordingly, Plaintiff Merlo, on behalf of herself and all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices, according to the availability of relief under the applicable statutes.

## COUNT V
### Breach of Express Warranty of Merchantability
### (on Behalf of Plaintiff Merlo and All Class Members)

130.   Plaintiff Merlo realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

131.   Defendant expressly warranted to consumers that its Product was "plastic-free" and pure. These statements constituted affirmations of fact and promises about the nature and quality of the Product, forming the basis of the bargain with consumers.

132.   Testing, however, reveals that the Product contains significant levels of microplastics, directly contradicting Defendant's express representations.

133.   Because the Product fails to conform to Defendant's express warranties, Defendant has breached its express warranty obligations under common law principles recognized in all states. As a result of this breach, consumers who relied on these representations when purchasing the Product have suffered harm,

including economic injury from purchasing a product that does not meet the promised quality and safety standards.

134.  Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they either would not have purchased the Product, would have purchased less of the Product, or would not have been willing to pay the premium price Defendant charged for the Product.

135.  On April 24, 2025, a pre-suit letter was sent to the Defendant via certified mail providing notice of Defendant's breach of express warranties and demanded that within thirty (30) days from the date of the letter, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint seeking damages would be filed. Defendant received the letter but has failed to take corrective action.

136.  Plaintiff, on behalf of herself and the Class, seeks compensatory damages, attorneys' fees, costs, and any other just and proper relief available under law.

**COUNT VI**
**Unjust Enrichment**
**(on Behalf of Plaintiff Merlo and All Class Members)**

137.    Plaintiff Merlo realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

138.    Defendant has been unjustly enriched at the expense of consumers by misrepresenting its Product as "plastic-free" and pure when it in fact contains microplastics. Consumers purchased the Product under the reasonable belief—based on Defendant's representations—that it was free from plastic contaminants.

139.    It would be inequitable for Defendant to retain the benefits of its wrongful conduct without compensating the consumers who purchased the Product under false pretenses. Therefore, Plaintiff and the Class seek restitution and disgorgement of all ill-gotten gains that Defendant obtained through its deceptive marketing and sale of the Product.

140.    Plaintiff, on behalf of herself and the Class, seeks financial restitution, attorneys' fees, costs, and any other just and proper relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Merlo respectfully requests that the Court enter judgment in her favor and in favor of the Class as follows:

A.    An order certifying the proposed Class and Subclasses; appointing Plaintiff Merlo as representative of the Class and Subclasses; and appointing Plaintiff Merlo's undersigned counsel as counsel for the Class and Subclasses;

B.    A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.    An order declaring that Defendant's conduct violates the statutes referenced herein;

D.    An order awarding monetary damages, including actual damages, statutory damages, compensatory, and punitive damages, in the maximum amount provided by law under the common law and the statutes named herein;

E. Injunctive relief and other forms of equitable relief that the Court may deem appropriate;

F.    An order for prejudgment interest on all amounts awarded;

G.    An order awarding Plaintiff Merlo and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.    Any further relief that the Court may deem appropriate.

## **<u>JURY TRIAL DEMANDED</u>**

141.   Plaintiff hereby demands a trial by jury.

DATED: June 2, 2025                    Respectfully submitted,

_____
P. Renée Wicklund (SBN: 200588)
**RICHMAN LAW & POLICY**
535 Mission St.
San Francisco, CA 94105
T: (415) 259-5688
rwicklund@richmanlawpolicy.com
*Attorneys for Plaintiff*